UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EKO BRANDS, LLC,

        Plaintiff,

v.

ADRIAN RIVERA MAYNEZ
ENTERPRISES, INC.; and ADRIAN
RIVERA,

        Defendants.

C17-894 TSZ

MINUTE ORDER

The following Minute Order is made by direction of the Court, the Honorable Thomas S. Zilly, United States District Judge:

(1) Plaintiff Eko Brands, LLC's motion to amend judgment, docket no. 151, is GRANTED in part and DENIED in part, as follows:

    (a) With regard to the reasonable royalty awarded to plaintiff by a jury in the prior patent litigation between the parties, plaintiff's motion to amend Paragraphs 46–48 of the Findings of Fact and Conclusions of Law, docket no. 149, to reflect that plaintiff may elect between such royalty award and a disgorgement of defendants' profit associated with products bearing the marks ECO FILL DELUXE, ECO FILL DELUXE 2.0, or ECO-FLOW during the period from April 2, 2015, through June 8, 2018, is DENIED. Despite its awareness long before trial that double recovery was an issue in this case, plaintiff did not previously contend that it is entitled to such election. *See* *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001) (observing that a district court "does not abuse its discretion when it disregards legal arguments made for the first time on a motion to amend"). Moreover, the authorities upon which plaintiff relies do not support its position. In *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000 (Fed. Cir. 2006), the Federal Circuit made clear that patent infringement and trademark infringement damages may not be awarded for the same sales of the

MINUTE ORDER - 1

same accused devices. *Id.* at 1016-20. Nowhere in the decision does the Federal Circuit discuss the concept of an "election" between remedies. Moreover, *Aero* involves patent and trademark infringement damages that were awarded in the same trial. In this matter, plaintiff had already obtained the patent royalty award, and the award had already been affirmed by the Federal Circuit, before the Court issued its Findings of Fact and Conclusions of Law on January 30, 2020. *See Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367 (Fed. Cir. 2020) (decided Jan. 13, 2020). Although a similar sequence was at issue in *Apple, Inc. v. Samsung Elecs. Co.*, 2014 WL 4467837 (N.D. Cal. 2014), which was also cited by plaintiff, in that case, the district court acknowledged the double-recovery problem presented by an award of damages in a prior case for design patent infringement and the award of damages in the instant case for infringement of utility patents, but it opted not to eliminate any duplicative damages until after the appeals in both cases had been resolved. *Id.* at *25. The *Apple* Court did not indicate how it would resolve the double-recovery issue or suggest that the matter would be subject to the plaintiff's unilateral election, but rather stated that it would "consult with the parties" and "allow for appropriate briefing" after both appeals were resolved. *Id.* at *26. The procedural posture of this case is entirely different, and plaintiff has recovered the amount adequate to compensate it for patent and trademark infringement for the period from April 2, 2015, through June 8, 2018.

(b) With regard to plaintiff's and defendants' products' respective compatibility with the Keurig® 2.0 machine, plaintiff's motion to amend Paragraphs 49–52 of the Findings of Fact and Conclusions of Law, docket no. 149, to reflect that defendants' profit associated with the ECO FILL 2.0 product is attributable *solely* to trademark infringement and/or unfair competition, is DENIED. Plaintiff's motion to amend merely relitigates matters decided by the Court. *See Zimmerman*, 255 F.3d at 740 (affirming the denial of a Rule 59(e) motion because it "repeated legal arguments made earlier and sought to introduce facts that were available earlier"). Plaintiff has not assigned error to Chart 1 on Page 25 of the Findings of Fact and Conclusions of Law, docket no. 149, which reflects the data in Trial Exhibit 473, and Chart 1 supports the Court's conclusion that defendants' gross revenues for their ECO FILL products correlated with defendants' introduction of an operable reusable filter for Keurig® 2.0 machines, as opposed to their use of the mark ECO FILL. As reflected in Chart 1, for almost a year before Keurig placed its 2.0 machine on the market in October 2014, defendants experienced virtually *de minimis* sales of ECO FILL products, but shortly thereafter, defendants' gross revenues soared. When other manufacturers, including Keurig, began offering cartridges compatible with the 2.0 machines, defendants' market share declined. Plaintiff's contention that defendants' residual volume of sales (for the years 2016–2018) relating to their 2.0 compatible product is tied *exclusively* to the use of the ECO FILL mark, as opposed to other factors like customer loyalty to a product first used before other options became available,

is undermined by the market-share information that plaintiff unsuccessfully attempted to introduce at trial. *See* Findings of Fact and Conclusions of Law at 34 n.19 (docket no. 149). Over the years following Keurig's redesign, plaintiff has lost ground to Keurig, which does not use any mark containing ECO or EKO, and not to defendants, whose percentage of industry sales has remained fairly steady. Moreover, during the years 2016 through 2018, defendants experienced net losses with respect to the ECO FILL 2.0 product, and thus, any error in not disgorging to plaintiff the profit associated with that product for those years is harmless.[1] In contrast, plaintiff was awarded all of the net profits associated with the ECO FILL 1.0 product, *see* Tables 1 and 2 of the Findings of Fact and Conclusions of Law (docket no. 149); *see also* new Table 3 attached hereto (*see* ¶ 1(d), below), and it therefore cannot be heard to complain.

(c) With regard to defendants' profits associated with ECO CAFAFE filters, plaintiff's motion to amend Paragraph 60 of the Findings of Fact and Conclusions of Law, docket no. 149, to reflect that, notwithstanding plaintiff's lack of a competing product, such profits are attributable *solely* to use of the mark ECO CARAFE and must be disgorged to plaintiff, is DENIED. Plaintiff's assertion that the Court erred in not awarding ECO CARAFE related profits simply because plaintiff did not have a directly competing product misapprehends the Court's ruling. The Court did not consider the absence of a competing product as a standalone reason for denying disgorgement, but rather as circumstantial evidence that the profits at issue were attributable to a factor other than use of the mark ECO CARAFE. Neither of the Ninth Circuit opinions cited by plaintiff support a different result. In *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117 (9th Cir. 1968), although the products were different, they bore the identical mark, namely "Black & White," which the trademark registrant had used in interstate commerce for more than 50 years in connection with its "scotch of excellent reputation," and which the infringers used for beer, but apparently only within intrastate commerce. *Id.* at 120. In affirming the district court's award of an accounting of the infringers' profits, the Ninth Circuit recognized that such remedy protects not only against a diversion of sales in the context of competing products, but also from the possibility that customers who buy an infringer's product, believing it was manufactured by a registrant, might be so unhappy that they will never again buy any item produced by the registrant. *Id.* at 122. This

---

[1] As indicated by the data contained in Trial Exhibit 274, defendants' profits associated with the ECO FILL 2.0 (also known as ECO FILL DELUXE 2.0) product were as follows:

|  | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|
| **Gross Sales Minus Cost of Goods** | $400,711 | $3,607,043 | $1,063,615 | $758,495 | $1,004,459 |
| **Allocated Expenses** | $212,994 | $1,677,245 | $1,153,702 | $1,470,896 | $1,185,311 |
| **Net Profit** | $187,717 | $1,929,798 | ($90,087) | ($712,401) | ($180,852) |

MINUTE ORDER - 3

risk, and the need in equity to address it, diminishes substantially when the marks at issue are not even close to being identical and the registrant offers no competing product, as was the situation in this case. While *Maier* is merely distinguishable, *TrafficSchool.com, Inc. v. eDriver Inc.*, 653 F.3d 820 (9th Cir. 2011), on which plaintiff also relies, actually undermines plaintiff's position. In *TrafficSchool*, the Ninth Circuit affirmed the district court's denial of the plaintiffs' request for an award of profits, reasoning that, in connection with their false advertising claim, the plaintiffs did not offer any proof of past injury or causation, and thus, the district court could not determine "with any degree of certainty what award would be compensatory." *Id.* at 831. In this matter, the Court has concluded that, given the relative weakness of plaintiff's EKO BREW mark, the minimal similarity of defendants' ECO CARAFE mark, and plaintiff's lack of a competing product in 2015, when defendants actually generated a net profit, any disgorgement of such profit, which was attributable to a factor other than unfair competition, would not be consistent with the Lanham Act's mandate that an award be compensatory, and not punitive, in nature. *See id.* (quoting 15 U.S.C. § 1117(a)).

(d) With regard to the calculation of defendants' profits to be disgorged to plaintiff, plaintiff's motion to amend Tables 1 and 2 of the Findings of Fact and Conclusions of Law, docket no. 149, to disregard the data in Trial Exhibit 274, is DENIED. Plaintiff is simply mistaken in its belief that Trial Exhibit 274 does not contain information for defendants' ECO FILTER, ECO SAVE, and ECO PURE products. The figures derived from Trial Exhibit 274 are set forth in the attached spreadsheet, which is hereby incorporated in the Findings of Fact and Conclusions of Law as new Table 3.

(e) With regard to defendants' profits after August 1, 2019, plaintiff's motion to amend Paragraph 53 of the Findings of Fact and Conclusions of Law, docket no. 149, to award disgorgement to plaintiff in an amount to be determined after defendants submit an accounting of profits from September 16, 2019, until June 30, 2020, is DENIED. Plaintiff did not raise this rather sensible solution prior to filing its motion to amend judgment, but instead previously argued that it was entitled to an award of defendants' profits at the rate of $57,092 per month. Plaintiff appears to concede that its position was unsupported by any evidence. The Court will not now permit plaintiff, at significant prejudice to defendants, to fundamentally alter the nature of its legal strategy and the factual basis for its claim of post-trial damages.

(f) With regard to injunctive relief, plaintiff's motion to amend Paragraph 67 of the Findings of Fact and Conclusions of Law, docket no. 149, is GRANTED as follows. The sentence on Page 37 of the Findings of Fact and Conclusions of Law, at Lines 9–12, is AMENDED to read (additional language is underlined): "Defendants may not use "EKO" as the initial letters of a mark, but

they may continue to use "ECO" as a prefix or other component of a mark, provided they include in close proximity <u>and in similar size or prominence</u> another trademark or trade name that makes clear the source of the product." The Court will enter an amended judgment to reflect this modification.

(g) With regard to defendants' trademark registrations, plaintiff's motion to amend Paragraph 69 of the Findings of Fact and Conclusions of Law, docket no. 149, to cancel Certificates of Registration Nos. 4,239,190 (ECO FILL), 4,796,840 (ECO CARAFE), and 5,741,858 (ECO FILTER), is DENIED. Plaintiff's dissatisfaction with the Court's exercise of its discretion is not a ground for amending the judgment, and plaintiff's request for additional findings seems disingenuous. The Court set forth in detail why plaintiff was not entitled to the broad injunctive relief it requested, <u>see</u> Findings of Fact and Conclusions of Law at ¶¶ 61–66 (docket no. 149), and those reasons apply with equal force to plaintiff's efforts to cancel defendants' trademark registrations.

(2) Defendants' motion to amend the Findings of Fact and Conclusions of Law and to amend judgment, docket no. 162, is GRANTED in part and DENIED in part, as follows:

(a) With regard to the registration of PERFECT POD, defendants' motion to amend Paragraph 36 of the Findings of Fact and Conclusions of Law, docket no. 149, is GRANTED in part as follows.[2] The second sentence of Paragraph 36 is AMENDED to read (additional language is underlined, deleted text is bracketed and stricken): "In contrast, Rivera did not seek registration of PERFECT POD <u>for "[p]aper filters for coffee makers" until January 2012, despite claiming first use in May 2006, or for "[b]rewing cartridge[s] not of paper"</u> until February 2016, even though the mark is part of defendants' website address and had been used in connection with the EZ-CUP product since at least 2010[ and with respect to paper filters since 2006]."

(b) With regard to the application to register ECO FILL, defendants' motion to amend Paragraph 40 of the Findings of Fact and Conclusions of Law, docket no. 149, is GRANTED in part as follows. The second sentence of Paragraph 40 is AMENDED to read (additional language is underlined, deleted text is bracketed and stricken): "[Defendants could have ascertained from the PTO's records that Eko Brands had been unsuccessful in its initial attempt to register EKOBREW, and t]<u>T</u>he relative speed with which an application for ECO

---

[2] The parties did not proffer as evidence at trial Certificates of Registration Nos. 4,186,815 and 5,478,203 for PERFECT POD. Pursuant to defendants' suggestion, <u>see</u> Defs.' Mot. at 3 n.1 (docket no. 162), the Court takes judicial notice of such Certificates of Registration. <u>See</u> Fed. R. Evid. 201.

FILL was filed (less than two weeks after the ECO FILL logo was developed versus six[6 to 10] years after using PERFECT POD for the products at issue[in commerce]) constitutes evidence of defendants' desire to beat Eko Brands to the proverbial punch."

  (c) With regard to the finding of willfulness, defendants' motion to amend Paragraph 42 of the Findings of Fact and Conclusions of Law, docket no. 149, to reject the advisory jury's verdict, is DENIED.  The corrections made to Paragraphs 36 and 40 of the Findings of Fact and Conclusions of Law, upon defendants' request, and in light of plaintiff's concessions, *see* Pla.'s Resp. at 2-3 (docket no. 170), do not alter the Court's view that the advisory jury's finding of willfulness was supported by the evidence, as set forth in Paragraphs 33–41 of the Findings of Fact and Conclusions of Law, as hereby amended.

  (3) Plaintiff's motion to strike, *see* Pla.'s Surreply (docket no. 173), portions of defendants' reply, docket no. 171, in support of their motion to amend, is STRICKEN as moot.

  (4) The Clerk is directed to send a copy of this Minute Order to all counsel of record.

Dated this 30th day of March, 2020.

            William M. McCool  
            Clerk

            s/Karen Dews  
            Deputy Clerk

**Table 3: Calculation of Defendants' Profits to Be Disgorged**

| PRODUCT ↓ YEAR → | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 |
|---|---|---|---|---|---|---|---|---|
| **GROSS PROFIT (gross sales minus cost of goods)** | | | | | | | | |
| ECO FILL 1.0 & MAX | $ 42 | $ 110,955 | $ 439,540 | $ 511,136 | $ 318,405 | $ 271,954 | $ 299,559 | $ 204,146 |
| ECO FILL DELUXE 1.0 | | | $ 1,377 | $ 2,457 | $ 1,592 | $ 1,108 | | |
| ECO-FLOW | | | | | $ 331 | $ 235,204 | $ 416,703 | $ 379,322 |
| ECO CARAFE | | | | $ 1,536,966 | $ 779,079 | $ 494,127 | $ 346,698 | $ 13,714 |
| ECO FILTER | | | | | | | | $ 33,426 |
| ECOSAVE | | | | | | | | $ 3,388 |
| ECO-PURE | | | | | | $ 16,902 | $ 21,826 | $ 30,770 |
| **PRO RATA SHARE OF EXPENSES** | | | | | | | | |
| ECO FILL 1.0 & MAX | $ 13 | $ 76,026 | $ 233,634 | $ 237,674 | $ 345,374 | $ 527,381 | $ 353,494 | $ 162,983 |
| ECO FILL DELUXE 1.0 | | | $ 732 | $ 1,142 | $ 1,727 | $ 2,149 | $ - | $ - |
| ECO-FLOW | | | | | $ 359 | $ 456,114 | $ 491,730 | $ 302,837 |
| ECO CARAFE | | | | $ 714,676 | $ 845,066 | $ 958,225 | $ 409,121 | $ 10,949 |
| ECO FILTER | | | | | | | | $ 26,686 |
| ECOSAVE | | | | | | | | $ 2,705 |
| ECO-PURE | | | | | | $ 32,777 | $ 25,756 | $ 24,566 |
| **NET PROFIT** | | | | | | | | |
| ECO FILL 1.0 & MAX | $ 29 | $ 34,929 | $ 205,906 | $ 273,462 | $ (26,969) | $ (255,427) | $ (53,935) | $ 41,163 |
| ECO FILL DELUXE 1.0 | $ - | $ - | $ 645 | $ 1,315 | $ (135) | $ (1,041) | $ - | $ - |
| ECO-FLOW | $ - | $ - | $ - | $ - | $ (28) | $ (220,910) | $ (75,027) | $ 76,485 |
| ECO CARAFE | $ - | $ - | $ - | $ 822,290 | $ (65,987) | $ (464,098) | $ (62,423) | $ 2,765 |
| ECO FILTER | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 6,740 |
| ECOSAVE | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 683 |
| ECO-PURE | $ - | $ - | $ - | $ - | $ - | $ (15,875) | $ (3,930) | $ 6,204 |

Source of Data for Table 3: Ex. 274. The amounts awarded to plaintiff with respect to Claim 1, as set forth in Table 1 of the Findings of Fact and Conclusions of Law, docket no. 149 at 30, are identical to the figures appearing in the column of Table 3 (highlighted in orange) that reflects the net profits for 2019. The net losses experienced during 2016, 2017, and 2018 were not used as offsets or otherwise considered. The profits to be disgorged to plaintiff in connection with Claim 2, which are summarized in Table 2 of the Findings of Fact and Conclusions of Law, docket no. 149 at 32, were computed as follows. The $514,326 awarded as to ECO FILL 1.0 (and MAX) for the period from January 1, 2012, to October 31, 2016, equals the sum of the figures in Table 3 for 2012 through 2015 (highlighted in blue); the loss sustained in 2016 was not included. The $822 related to ECO FILL DELUXE 1.0 (*see* items highlighted in pink on Table 3) consists of the $645 in profit realized in 2014, and 13.5% of the profit generated in 2015 (or $177), based on a cut-off date of April 1, 2015, resulting from the patent litigation, and the monthly sales figures provided in Trial Exhibit 473.